Mr. Carter, this quarter is now in session. Please be seated and call the next case, please. Case No. 315-0632, Deutsche Bank National Trust Co. v. Bellex v. Justin Carter v. Colbert v. Bodzianowski, et al. Mr. Carter, you're on. Good morning, everyone. May it please the Court, Counsel. The issue presented in the case today is whether or not the Bank of America v. Basman case presented a change in law so that it would preclude the res judicata effect that the trial court applied in this particular case, which ultimately led to the dismissal of my client's foreclosure action. Today I'd like to focus my arguments on two primary areas. First, I'd like to examine res judicata law in Illinois and specifically talk a little bit about this idea that there is an exception to res judicata for a change in law. I'll also address some of the defendant's arguments I raised in the brief. And finally, I'd like to focus on the Basman case itself because that really is the focus of our brief and our argument. Prior to 1997, res judicata was simply a doctrine of convenience in Illinois. When the Statler v. Consolano case came along, which is a Fifth District Court of Appeals case, when it came along in 1997, it was a case of first impression. They took up the idea of whether or not a change in law could in fact be an exception to the application of res judicata. That case involved two neighbors who essentially had an ongoing property dispute. The Illinois Supreme Court had come along, had enacted a new decision, which completely affected a prior decision in that case. And so the Fifth District Court of Appeals and Statler said, okay, well, there is going to be an exception to res judicata when there is a change in law. And specifically they talked about whether an intervening decision created an alternate situation. In that case and later the Hayashi case, the 2014 case, which we also cite in our brief, they examined what is this idea of an alternate situation. And they came to the conclusion that an alternate situation arises when that intervening decision changes the claims and defenses of the parties so that the prior judgment no longer has a controlling effect on future litigation. Now the defendant would argue that the standard enacted in Statler in the line of cases is this idea that the change only occurs when there is a change to the fundamental controlling legal principle. And that idea was touched upon in Statler, but then it was discussed further in the discussion about a change in claim and defenses. If we just go with the defendant's idea that it's this change in a controlling, fundamental controlling legal principle, we're not really left with a whole lot in terms of how do we apply that standard to determine whether an intervening decision is a change in law. It's sort of a vague and amorphous idea, and there's really no way to apply it. And that's why I think it's appropriate, especially in our circumstances, that you have to read further into the line of decisions that really look at how did the intervening decision change the interaction, the claims and defenses between the parties. Some of the other arguments that the defendant is raising in this case is that the line of cases that talk about this change of law exception also talk about the undue burden, or the unjust burden, I should say, to the other party. And it also talks about whether or not there's an ongoing legal dispute because the cases have declined to apply this change in law exception in cases such as personal injuries. Because in those cases, you have an injury, and you have a remedy, and then the case is done. There's no ongoing dispute as there was in Statler, again, where there was an ongoing dispute over property rights between the two neighbors. Much like our case, my client holds a note in a mortgage that is not being paid. They are without a remedy to collect on that note in a mortgage. Certainly the defendants in this case would not be unjustly burdened because they've had the benefit of living in a house for several years without having to pay anything, at least to my client. So we believe that our particular case falls closer to the Statler line of decisions where there is an ongoing dispute, and there's no unjust burden to the defendants. And certainly with respect to the rights between my clients and the defendants, we have not adjudicated the rights and obligations under the controlling loan documents. The 2011 foreclosure case was dismissed on a 12-6 motion, which really only looked at the two arguments that the defendants were making in that case. Your client still holds the note in mortgage? Your Honor, we would argue that we've always held the note in mortgage, including today, yes. But you do now? Correct. And they're still not paying? Correct. And it's because of the 2011 foreclosure, excuse me, the 2011 dismissal, and admittedly, my client did not appeal that. I believe they did not appeal it because at that time in 2011, there was no Illinois case law on this point, and so they had very little basis on which to appeal. Why does Illinois case law control? Because the federal court was sitting in diversity jurisdictions, so they're going to look to Illinois case law, if there is any Illinois case law, to determine whether or not Illinois would view the noncompliance with pooling and servicing agreement to be a bar or defense to a foreclosure action. What was the choice of law on this? Is there any dispute that the pooling and service agreement, following up on Justice Holdridge's question, agreed that New York law would apply? The pooling and servicing agreement contained a choice of law provision about New York law with respect to violations of the pooling and servicing agreement. However, this exact issue was examined in Basman, and Basman acknowledged that, okay, New York law is going to control, but... But the facts in that case caused the appellate court from the 2nd District in Basman to say, the parties haven't helped us, and the court in that case, the trial court, concluded the transaction was voidable, and so the appellate court said, we're not touching that. In this case, the trial court, the federal court, concluded this transaction is void under New York law, and even Illinois law says that a void transaction can be challenged by a third party. I would say it's difficult to determine what the federal judge in the 2011 case was going off of, because, one, the transcript is very, very short, and two... But the pleadings are there. Correct. The pleadings are there. But we don't know if she determined that these were void transactions or voidable. She simply was going with what the defendants were arguing. Well, in federal court, your client argued that Illinois law controlled, or Michigan law controlled, and the court clearly found New York law controlled. So you're asking us to revisit that ruling? No, Your Honor. In 2011, this was a very novel idea. Because you lost on the choice of law arguments you made in federal court. You did challenge the borrower's standing to raise the transaction as void or voidable, and the federal court disagreed, and let me know if you think I'm wrong, found the borrower's head standing. Exactly. And that's the change in law that we're arguing today. Under New York law. Well, now under Illinois law, because it's in Illinois that there is a line of cases, starting with Baskin, that in Illinois, this is no longer a viable defense to a foreclosure action. Did Baskin rely on any case law that you could not have argued when you were in federal court? At that time, there was no published Illinois decisions on this issue, so they had to look to New York law and other persuasive. And all the cases cited by the court with Baskin predated the time you were in federal court. You could have raised those very same arguments. You are correct, Your Honor. But we are litigating a little bit in hindsight with respect to that, because at the time in 2011, again, this was a new and sort of a novel idea that really hadn't been addressed. It doesn't matter whether it hadn't been addressed. Could you have raised it based on the existing case law? And somebody else raised it later, but you could have raised it. Yes. And that's what raised you to file a lawsuit. Yes, if the idea that those cases were out there and they could have been raised, yes, I agree with you. All you have to do is look at the dates. Yes, that's what I'm saying. Your client's attorney, I don't know what he was doing in federal court. I don't know. He didn't argue any New York law to point out that the Baskin court did their own research, because the attorneys before the Baskin court didn't do their research. And you look at those New York cases, they all predate that federal decision that you received. So I'm still trying to understand. I don't know, quite frankly, what Baskin said or didn't say, because I don't think it's very clear that there's really a holding in Baskin. I mean, it's quite frankly like the federal judges, you know, I'm getting this off my docket, because your client's attorney just amended the other side and said, I don't have anything to say. I mean, this is bizarre. Now, all of those case laws to point out the contradiction as to whether it's void or voidable, that PSA under New York law, which was the law governing this relationship, existed, and they were never argued. And I think to Justice Wright's point, if they were never argued, then why doesn't race judicata apply? I would argue that race judicata, they could have been, but they were not. And again, I think at that time, you know, I can't jump into counsel's mind. I believe he was focusing on, in his mind, where the Illinois law was at that time, and Illinois law at that time was really focusing on... Well, why didn't he look at Alaskan law? I mean, he didn't even know what law he was supposed to be arguing. Again, this was a completely new, well, it was a new argument. It was a new defense. And I think a lot of counsels were struggling with how to address this issue, because it was pulling a lot of very unknown trust law out of New York, when, in fact, maybe you didn't have to do that, because maybe there was law in your own state that could counteract that. And I think that's why he went back to UCC. What was the law provision supposed to do? And again, Your Honor, maybe they had arguments with respect to the choice of law provision. They could have, at that time, argued that no, Illinois law is going to apply, because never mind that there may not be standing to address noncompliance with the PSA. We've got the UCC over here in Illinois that says, I hold the note, I hold the mortgage, therefore I am entitled to enforce the rights under the note. And I think that's what they were thinking was, well, geez, Your Honor, we've got the... So they were just writing out, this is governed by New York law. And again, what's the law on that? Didn't that be done? The law with respect to... I'm sorry, Your Honor, the law with respect to... Yeah, I think these documents say this is to be interpreted under and governed by New York law. Am I correct? And that's what the Bassman court ultimately addressed was, what's the choice of law here? Let's look to New York trust law to determine whether or not noncompliance with the trust is going to be a void or voidable transaction. They first started their opinion by examining that, and they used New York trust law to do that. Doesn't Bassman hold or discuss that if it's a void transaction, the third-party debtor has standing? Yes, it did discuss that. But the facts... If that was the outcome. But the facts in Bassman was, trial court found it was voidable. We're not touching that. We're not touching that. Yes, they affirmed the trial court's decision that they found an alleged violation or noncompliance with the employment and servicing agreement was a voidable transaction. In that case. In that case. And in that case, as in our case, they're arguing the same noncompliance. In that case, the Bassman court said, we don't know whether the trust ratified the transfer, but that was that case. In this case, the federal court had all the arguments, found the transaction was void. Well, your Honor, I don't think the federal court had all the arguments. And this is where I was going... And so that's why you need the do-over. Well, it's not a do-over if the body of law allows us to exclude the re-application of race-gender equality. What body of law are you speaking about? Illinois or New York? I'm speaking about Illinois law, your Honor. The Statler line of cases, which allow an exception to race judicata if there's a change in law. And again... Your time has two minutes. Thank you. And again, I believe the Bassman case was that change in law, because if the Bassman case had been published and was available, I believe the judge, the federal judge sitting in the diversity jurisdiction, would have looked to the analysis that the Bassman case did under New York and Illinois law and said, in Illinois, this is no longer a viable foreclosure defense, meaning a borrower cannot raise... Can our appellate court in Illinois change New York law regarding whether the transaction is void according to the statute that exists in the state of New York? They weren't... The Bassman case was not trying to change the law with respect to whether it was void or voidable. They were simply saying... Affirming that because the borrower was not a third-party beneficiary to the PSA or a party to the PSA, which is essentially a contract, they didn't have standing under Illinois law to challenge the pulling and surfacing agreement. So I absolutely acknowledge there's an intersection of New York and Illinois law here, but again, I think if the Bassman case was available, the New York judge... Excuse me, the New York judge, the federal judge would have deferred to that and said, okay, there's this public decision. They've already gone through this analysis. The defendants in our case are arguing the exact same violations of the PSA. Therefore, Bassman is the controlling case in my analysis. So you are saying, to simplify this, because it's really fairly simple... I would agree. Okay. You're saying Bassman clearly said that this is voidable. Bassman said that under the New York trust law, these types of violations would have been found to be voidable. And they said, therefore, and under Illinois contract law, the borrower does not have standing to contest violations of the PSA. Yeah. And I think if that was available, that would change the act of holding the Bassman. Correct. Okay. I think... I think the holding of the Bassman is both. I mean, I have a problem. Personally, I have a problem finding a real solid holding in Bassman. Well, I think... Because they throw in burden of persuasion, so that would imply it might be voidable and defendants lose because, I mean, avoid it. What do you think they're really talking about? I think Bassman is still the seminal case on this issue because the line of cases from 2012 and on all go back and cite Bassman for the proposition that Bassman was the case that decided there's no standing for a borrower to contest noncompliance with the PSA. And so I think other cases believe that Bassman, the holding of Bassman was, in fact, what we are arguing it is today. And, again, I believe that that case would have changed the outcome. And if it would have changed the outcome, it would have been the necessary change in law. Because you're saying the federal decision is based upon it being considered to be what, voidable? Or avoidable. We're not sure, Your Honor, because the federal decision leaves very little. I mean, it's three sentences, but assuming they're going along with what... It relies on the statute that declares the transaction is void. Doesn't the federal decision rely on the statute? It relies on the... To me, the transcripts indicate that the federal judge relied heavily on the arguments made in the defendant's reply brief. And in the reply brief, they mentioned void. Correct. But they mentioned, yes, void. Time is up, counsel. Are there any further questions? Thank you very much for your time. Good morning. May it please the Court. I agree this is a simple case. What's your name? Matthew Hector, on behalf of the appellate... I'm sorry, Your Honor. I do agree this is a simple case. I think it all hinges on whether the appellant missed its chance in the first lawsuit. And I think it's pretty clear that they did. Their federal foreclosure action was dismissed with prejudice because they lacked standing to bring the suit. That's what was argued in the motion to dismiss, and that's the motion that was granted. At the hearing on the motion, the judge noted that there was new material raised in the reply and gave the plaintiff in that case, which was the same plaintiff in this case, an opportunity to go ahead and address that. They could have done it via serve reply. They could have addressed it orally there. Instead, their counsel said, you know, it's kind of a compelling argument. And so the judge granted the motion. They didn't file a motion to reconsider. And the compelling argument, to make it simpler, is that it was a void transfer into the trust. That's correct. Okay. And, you know, they didn't file a motion to reconsider. They didn't file a notice of appeal. And they had those methods available to them. I know counsel had said that, you know, well, there wasn't any Illinois case law on the subject. But there was plenty of relevant case law out there. The Basket Court went to the trouble of collecting all of it. But that case law all existed at the time the 2011 case was decided. Let me ask, is it clear that the federal court ruled to dismiss the case because the transfer was void or that it was voidable and that the defendants had standing to – and because the defendants have standing to challenge that, it's voidable and that's the basis for the dismissal as to a finding that the transfer was void? I think that based on the reply brief, which asserts that it's a void transfer, I think that when the judge says there's a lot of really new material in this reply that's compelling, what do you think? And they say, well, it's pretty compelling. You know, instead of responding, I would argue that that's the basis for the decision. The transfer itself doesn't, I don't think, specifically state either way. I think it's clear from the briefing that it would be a void transfer. And I think the real confusion with Bassman, in my mind, is that Bassman isn't anything new. Bassman is just collecting old law. It's always been a principle that you can't attack an assignment without having some standing to do so. That would normally have to be a void assignment as a third party. Bassman, when it speaks to the PSA, is speaking specifically about the PSA in Bassman. Not all PSAs are the same. And it references specifically the contract language in the PSA that specifically excludes any third parties from challenging any actions that the trust takes. So I would say that Bassman is more of an affirmation of that specific PSA than it is a prohibition on defendants arguing that there may be a void transfer across the board. Certainly, Bassman does put some level of burden of persuasion on the parties and finds the defendants just didn't persuade them. And I think that's a very relevant point about Bassman. Really, Bassman just holds that the district court got it right in this case. And it moves on. I don't think it bars any defenses. Certainly, I know that the plaintiff's bar in Illinois would like it to. And we would like it not to. That's just kind of the way these things work. But I don't think that Bassman is really a change in the law that justifies not applying rest judicata here. You still have same parties, same cause of action, final adjudication by a corporate jurisdiction. Well, let me ask about the same cause of action. There's an ongoing default. In other words, they say, okay, we're going to forget about the default and any nonpayment before the date of that federal decision. And three files saying, no, we're just talking about their defaults after the date of that federal court decision. Well, in this case, they asserted the same date of default. I don't think there is such a thing as an ongoing default in a mortgage foreclosure. I mean, somebody can make a payment on their mortgage and let's say they catch it up or whatever and then they pay for a while and they say, okay, you're not in default and then they stop paying. But if there's still money due under a mortgage and a payment is due monthly, every month you don't make the payment. Isn't that another default? Well, I can't speculate as to facts outside of this, but I would say that if you default on May 1st and then catch up and default on August 1st, that's a second default. However, if you default on May 1st and then no longer make payments, that's the same default. That doesn't change. Can't the lender choose? I'm just going to forgive those earlier defaults and I'm going to give you a break because the defendant is not prejudiced. He just got six months of free living. I mean, I've not seen a lender do that. The only time I've seen a lender re-date a default was to get around a case where they had voluntarily non-suited twice and then tried to file a third time and alleged a new default date. I say, oh, we forgive some of those. And that case is on appeal, I believe. But the point being that – This complaint alleges date of default is 2010. So although Justice Smith makes some really good points as to how to get around it, they didn't file a foreclosure action based on defaults that occurred after 2010. Right. And I don't think there's really an ongoing default. I mean, I think that especially the way these work is if you're in default, the bank accelerates and they put you in a foreclosure situation. Unless you're reinstating, you can make payments all day long. And unless you're making a reinstatement payment, those get sent back typically or they get put in a suspense again. And maybe they're applied at the end of the case, the total balance when the judgment comes down. But there's really no way to make a payment at that point. Isn't it kind of an equitable principle? I believe maybe it has some foundations in equity, but I believe that in this situation we're talking about – Well, I'm just wondering where the equity is in giving somebody the free house. And I don't think there's a free house here necessarily. There's still a lien recorded against the property. There's still a mortgage recorded against the property regardless of whether plaintiff can do anything with regards to that mortgage in Illinois. I can't speculate as to other avenues plaintiff might have to try and recover its funds, but certainly if the defendants want to sell their home at some point, they've got to address that lien. It's still the only thing in the room. Well, there's a benefit to the pooling of these debts as well and to a trust. And so when you create a trust for pooling of debts, there is some strict compliance required in terms of the trust, I would guess. That's correct. You can't just ignore that contract language, nor did the court ambassador. Right. Well, I think the compliance is there because they're trying to create a trust that's bankruptcy remote and has certain tax benefits. And you have to comply with a certain structure to make that happen. And one of those rules would be that all the loans make it into the trust before it closes. And I don't think the BASMA, again, I think it just analyzes that specific PSA. So this loan could have been properly transferred into the trust? Well, I can't speculate as to that. It was the assignment that was improper that skipped a step. Which is an essential part of transferring it into the trust, though. At least in this PSA, the assignment is part of that transfer process. So if one step in the chain fails. Correct. So if a step in the chain fails, then. So if they had redone the chain, it could have been properly transferred into the trust? That would be outside. I can't really speculate as to that, but I mean. Who is the plaintiff in this action? In this action, I believe it is the plaintiff. It's an argument against you can't foreclose on me because you don't hold it. Correct. Because you never had an assignment that met New York law requirements. That was our argument in the federal case. And arguably, the defendant's position is void. That's correct. That's where we've been at. I took a look at Bassman really quickly. In fact, every single case in Bassman predates the federal court case. There's no reason why somebody could not have done the research and defended that position. So I think this is really simple. It's a case of missed opportunity. You're aware there's a subsequent New York case that interpreted New York law, though it's not the highest court, that says that these are voidable. Right. There is a split in New York now. The most recent one. Right. And the intermediate court of review says it's voidable. But does that, I think, again, that's maybe a change in New York law, maybe it's not. But at the end of the day, this is a plaintiff that didn't seek its recourse in its first case and was dismissed with prejudice, and they would like a second bite at the apple, and they're trying to get a do-over. How persuasive do you think the Bassman decision would be in a New York court of law? Well, the Illinois appellate court has decided that these transactions are voidable. I mean, it is an Illinois appellate court interpreting New York law. That's not a change in New York law. If we were presented with a situation from another court in New York had changed the law, then maybe under Illinois law regarding race due to cut, we could avoid applying race due to cut. But that is not the argument being made. Correct. I would say that, yeah, that seems apt. I don't think that an Illinois court is changing New York law. I don't think a New York court is going to change an Illinois law. And they haven't presented a New York case that changes New York law. Correct. For us to look at. And I think that, you know, so Bassman, again, while some people are very excited about it, I don't think Bassman is as big of a deal as some people make it out to be. I really do see Bassman as being an opinion that just reaffirms the district court, hey, you read that contract correctly, good job. Bassman is an opinion that was written with a bit of a handicap by the appellate court that was trying to do research. The attorneys hadn't done for that court. That's correct. So, you know, and maybe, you know, who knows how Bassman would have turned out if some people had done different research or whatever the case may be. But I just think that, you know, the Bassman court was doing the best of what it had. And it reaffirmed what the circuit court had already determined from reading the PSA. Maybe they should have just relied on Glorese and ruled by order. That probably would have stopped a lot of confusion in Illinois. Well, if there's no other questions, I'll weigh the rest of my time. Thank you. Thank you, Mr. Director. Mr. Carter, somewhere above. Thank you, Your Honor. First, I'd like to address the discussion about the default date. In our opinion, every month that goes by without a payment, every time property taxes aren't paid, every time insurance isn't paid, that's a technical default in the mortgage. We believe each month that follows, therefore, is a continuing default. But this complaint in state court doesn't allege a new default date. Correct. And the reason why we didn't just fast forward to a new default date is because we'd still be in the same boat. The federal court dismissed it with prejudice as to this plaintiff, my client, not with respect to any other party that could come forward and show that, A, I guess they're the proper holder of the notes in mortgage, or B, if it was a different trust, hadn't violated terms of the PSA. So I don't think we would have been able to get around this issue by just simply pushing the default date forward, just because of the way that the opinion, the arguments worked themselves out. There's a kind of black letter law that when there's a default, it continues on in default status regardless of subsequent unilateral actions by the debtor. There has to be an acceptance and reinstatement in effect, something to that effect before you. I would say, Your Honor, even if I said yes 100% to that, let's fast forward to after the federal court decision, where, okay, now we can't sue in this past default. Next month goes by, okay, that's a new default now. So I would say even under that circumstance, there's going to be a new default after the federal court decision because further payments or taxes or insurance weren't paid. So we get at least two defaults. But, again, in our view, we believe every month that goes by is an actual default. But we're still back to the same action you brought in the federal court, same default alleged date. Yes, in this complaint we allege the same one. Again, I think, unfortunately, that's not dispositive of the issue. I think race judicata, regardless of the default date, I don't think we get around that argument. How do we get around the attorney representing the trust in federal court saying, you know what, that's a good argument, that's a compelling argument? I think in agreement with, yes. I mean, you saw some of the peppering of the attorneys earlier today. You are really stuck with facts, the procedural facts. Yes, yes. How do you get around that? His statement that, you know, yes, my opponent has made a very compelling argument. I don't think that that is an acquiescence to getting the case dismissed. I don't think he was agreeing, yes, please, I'm agreeing to dismiss our own case. I think it was simply an acknowledgment that they were without any tools in their toolbox to argue as to this new type of argument that came up. Yes, I grant it. The fact that they didn't appeal that, how do you get around that? Again, I believe that they were relying on the UCC primarily, and in Illinois if you have the note of the mortgage at that point in time, you know, that's all you needed to bring forward a mortgage foreclosure. It was actually even easier in 2011 than it is now to simply just attach a copy of the notes unendorsed if it needs to be endorsed, and you didn't even have to attach the assignment in 2011. So the attorney decided to file a federal action instead of an action in Illinois because of the choice of law provisions in the PSA? No, no, I think the choice to file a federal court I think had to do more with what was going on at the time in this body of law. Well, not body of law, but the state courts were inundated with these types of foreclosure actions. It took much, much longer to prosecute a foreclosure in state court than it did in federal court, so I think it had more to do with that. So give us the new tool in the New York toolbox, in the body of case law that has evolved since 2011 in the New York toolbox that allows us to escape applying race judicata under Illinois law. Right, and I think we don't have to get to that argument because the Statlin line of cases focus on what is now binding on Illinois courts. Even if there was a new New York court, New York law, that said exactly what the Baskin case said, an Illinois court sitting here, even with the choice of law provision that talked about you have to defer to them for trust, New York law for trust issues, whether it's void or avoidable, doesn't have to apply the New York law if they're looking at the contractual issue as to whether or not a borrower would have standing, because that's an Illinois question. You're ignoring the PSA. You want us to ignore the PSA that says New York law governs. Quite the opposite, Your Honor. I believe that Baskin was correct in holding that New York law says any transactions such as those that are being alleged are voidable. They took another step and said, and oh, by the way, we agree, borrowers do not have standing to contest this under contract law because they're not a direct or indirect beneficiary or a party to the contract. So I'm not, and I hope I'm making that distinction clear. And that's why I say the Statlin line of cases, they're focusing on what is binding on Illinois courts. And Illinois courts now have said there is no standing. They recognize New York law says it's voidable, but they say in Illinois. Contract law says there's no standing. So we're not going to allow this defense. I'm sorry. Which courts in Illinois? Your Honor, again, there's a multitude of cases we cited in our brief which follow the Baskin line of decisions. Both state and federal. Federal third district? No, Your Honor. Not from the third district that I could locate. Then there's no Supreme Court. And no Supreme Court. We acknowledge that. Some districts in Illinois have them. It would be proper. Correct. Some districts and also federal courts in Illinois applying Illinois state law have followed the Baskin decision. Which they would have to. Correct. And that's, again, going back to the Statlin. Still up in the air because there isn't any Supreme Court decision yet. What we learned about the Statlin line of cases doesn't require that there has to be a change of law from the Illinois Supreme Court. Just a change of law that's binding on some other Illinois courts. Time's up, counsel. Again, thank you, everyone. I appreciate your time. Thank you both for your arguments here this morning. The matter will be taken under advisement that this position will be issued. And right now we'll be in recess for a panel change. Thank you. Thank you, sir.